UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROGER NAPOLEAN GRANT,

Defendants.

No. 2:25-cv-2394 TLN AC

FINDINGS AND RECOMMENDATIONS

Plaintiff's motion for default judgment, ECF No. 23, was heard before the undersigned on March 18, 2026, via videoconference. Jeremy Hendon appeared for the United States and Roger Grant appeared in pro se. ECF No. 30. For the reasons explained below, the undersigned recommends that the motion be granted and that default judgment be entered for plaintiff.

I.    Background and Procedural History

The United States brings this action for injunctive relief to nullify false liens that defendant Roger Napoleon Grant has filed against numerous federal officials with the California Secretary of State. ECF No. 1.[1] The complaint was filed on August 21, 2025. Id.

[1] The complaint identifies a total of 29 purported UCC Financing Statements and related Amendments naming the following purported debtors: the Attorney General of the United States; the former Acting Commissioner of the Internal Revenue Service and current Deputy Secretary of the United States Treasury; the former Acting United States Attorney for the District of Colorado and current First Assistant United States Attorney in the District of Colorado; the current Clerk of Court for the United States District Court for the District of Colorado; two Department of Justice,

1

On October 6, 2025, the pro se defendant filed two documents: a "Non-Negotiable Notice of Acceptance" and a "Non-Negotiable Inquiry Notice." ECF Nos. 5, 6. The "notice of acceptance" acknowledges receipt of initial case documents. ECF No. 5. Like all subsequently filed "Non-Negotiable Notices of Acceptance," the document contains the following text:

- I do not argue the facts, jurisdiction, law or venue;

- I request you close the Account;

- I request you issue me All Bonds and waive all Public Costs;

- I request you adjust and set-off all Public Charges by the exemption in accord with Public Policy;

- I request Discharge.

Id. at 1. The document concludes, "Dishonor may result if you fail to respond." Id.

The "Non-Negotiable Inquiry Notice," ECF No. 6, consists of a list of questions apparently directed to the court, with a request for written response within 7 days and a warning that "[d]ishonor may result if you fail to respond point-by-point." Id. at 1. Both notices filed on October 6, 2025, and all documents subsequently filed by defendant, identify him as "Roger Napoleon Grant, a sentient moral being." See, e.g., ECF No. 5 at 1.

Later in October 2025, defendant filed two documents captioned "Notice of Dishonor" (ECF Nos. 8, 10); three more documents titled "Non-Negotiable Notice of Acceptance" (ECF Nos. 9, 11, 12); and another "Non-Negotiable Inquiry Notice" (ECF No. 13).

On November 20, 2025, plaintiff requested entry of default and default was entered by the Clerk on November 26, 2025. ECF Nos. 14, 15. The undersigned issued a minute order on December 1, 2025, which stated in pertinent part:

> Although the pro se defendant has appeared and filed numerous documents (ECF Nos. 5, 6, and 8 through 13), none of them is an Answer within the meaning of Rules 7(a) and 8(b). Because the time to serve a responsive pleading has passed without the service of an Answer or other response to the complaint that is cognizable under

Tax Division criminal trial attorneys; and an Internal Revenue Service Criminal Investigator. ECF No. 1. These false liens were allegedly filed after defendant learned that he was being criminally investigated for tax-related offenses. Id. The complaint also alleges that defendant has harassed and threatened numerous federal officials in relation to the criminal investigation. Id.

2

> Rule 12(b), entry of default is appropriate. However, in light of defendant's pro se status, the court on its own motion will extend the time for responsive pleading. Defendant shall file an Answer that complies with Rule 8(b) or a motion contemplated by Rule 12(b) within 21 days of service of this order. Failure to comply with this order will result in a Clerk's entry of default.

ECF No. 16. The Clerk's Entry of Default was accordingly vacated. ECF No. 15.

On December 15, 2025, defendant filed a "Non-Negotiable Notice of Acceptance" of the minute order. ECF No. 17. This was followed a week later by another "Notice of Dishonor." ECF No. 18.

Plaintiff again sought entry of default, ECF No. 19, and default was entered on January 14, 2026. ECF No. 20. Defendant responded by submitting a "Non-Negotiable Inquiry Notice" (ECF No. 21) and a "Non-Negotiable Notice of Acceptance" (ECF No. 22).

Plaintiff moved for default judgment on February 3, 2026. ECF No. 23. Defendant responded with a combined "Non-Negotiable Notice of Acceptance" and "Non-Negotiable Inquiry Notice" (ECF No. 25) and a stand-alone "Non-Negotiable Inquiry Notice" (ECF No. 26). These were followed by two "Notices of Dishonor" (ECF Nos. 27, 28).

II.    The Motion

Plaintiff seeks a default judgment and injunctive relief. ECF No. 23. Specifically, the United States seeks a declaration that the liens specified in the complaint are null, void, and without legal effect; expungement of the false liens from the public record; leave to file this court's judgment with the California Secretary of State and in the public records of any other jurisdiction where documents identical or similar to the liens at issue may have been filed by defendant; and an injunction prohibiting defendant from filing documents that purport to create nonconsensual liens against the property of federal officers or that disclose the personal identifying information of federal officers. ECF No. 23-1 at 11-13.

None of defendant's filings respond to the substance of the motion. His "notice of acceptance" specifically state that he does not argue the facts or the law. ECF No. 25 at 1. At hearing on the motion, defendant confirmed that he does not intent to challenge the facts alleged in the complaint or to present any legal arguments.

3

III.    Standards

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's

4

default conclusively establishes that party's liability.  Geddes, 559 F.2d at 560.

IV.    Discussion

A.  Defendant is in Default

Most defaults occur when a defendant fails to appear.  In this case the defendant has appeared in the action and repeatedly filed documents.  Not a single such document, however, is legally cognizable.  The undersigned set aside the Clerk's first entry of default sua sponte, to give the pro se defendant an opportunity to cure his default by filing an answer that admitted or denied plaintiff's allegations and plainly stated any defenses as required by Fed. R. Civ. P. 8(b).  See ECF No. 16 (ordering defendant to file an answer in conformity with Rule 8(b) or a motion under Rule 12(b)).  Defendant did not do so.  None of his filings can be construed as a pleading within the meaning of the federal rules, and none expresses an intention to defend—to the contrary, defendant has affirmatively expressed his intention *not* to contest the facts or law.  See, e.g., ECF No. 17.  Accordingly, although he has appeared, defendant has failed to "plead or otherwise defend." Fed. R. Civ. P. 55(a).  Entry of default upon plaintiff's second request, ECF No. 20, was therefore entirely appropriate.

B.  The Eitel Factors

1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer prejudice if the court did not enter a default judgment.  Absent default judgment, plaintiff would be without recourse for the alleged false liens.  Accordingly, the first Eitel factor favors the entry of default judgment.

2.  Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175.  Here, for the

5

reasons now explained, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

The Internal Revenue Code provides that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Section 7402 demonstrates "congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." Brody v. United States, 243 F.2d 378, 384 (1st Cir. 1957). "[T]here need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue [under § 7402(a)]. The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws." United States v. Edwards, 2008 U.S. Dist. LEXIS 67186, 2008 WL 1925243, at *3-5 (E.D. Cal. Apr. 30, 2008) (quoting United States v. Ernst & Whinney, 735 F.2d 1296, 1300 (11th Cir. 1984)).

"The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions." United States v. Ekblad, 732 F.2d 562, 563 (7th Cir. 1984). Section 7402(a) empowers a district court "to void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes." Ryan v. Bilby, 764 F.2d 1325, 1327 (9th Cir. 1985). Bogus liens have been asserted "to harass IRS employees and deter them from enforcing the tax laws. The tax protestors, while claiming to act in the interests of freedom and personal liberty, use this weapon to harass private individuals in their private lives, as part of the tax protestors' campaign." United States v. Van Dyke, 568 F. Supp. 820, 821 (D. Or. 1983). Such liens "threaten substantial interference with the administration and enforcement of the internal revenue laws and are calculated to molest, interrupt, hinder and impede officials of the Internal Revenue Service in the good faith performance of their official duties as employees of the government of the United States." United States v. Hart, 545 F. Supp. 470, 473 (D.N.D. 1982), aff'd, 701 F.2d 749 (8th Cir. 1983).

There is no federal or state law that allows a citizen to file a lien against a public official

6

because the citizen feels aggrieved.  United States v. Barker, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998).  Under applicable California law, a lien is created by a contract between the parties or by operation of law.  Cal. Civ. Code § 2881.  Under California Commercial Code section 203(b)(3)(A), a security interest in personal property is created by a security agreement between a debtor and secured party.  There must be binding security agreement to make the security interest enforceable.  In re CFLC, Inc., 209 B.R. 508, 510 (B.A.P. 9th Cir. 1997), aff'd, 166 F.3d 1012 (9th Cir. 1999).

The allegations of the complaint are sufficient to establish the falsity of the purported liens at issue.  None of the named federal government officials had any contractual or other relationship with defendant outside of their official duties.  ECF No. 1, ¶¶ 11-12, 19-20, 27-28, 35-36, 42, 49, 57.  None of them have engaged in any personal transactions with defendant or owe him any money.  Id., ¶¶ 13, 21, 29, 37, 43, 50, 58.  Accordingly, there are no enforceable security interests as a matter of law, and there can be no legitimate liens.

The documents filed with the State of California purporting to impose liens on the personal property of the officials, numerous of which are attached to the complaint, are plainly shams.  For example, Exhibit 1 is the UCC Financing Statement (UCC 1 Form) filed with the California Secretary of State that identifies Pamela Bondi as the debtor and defendant as the secured party.  ECF No. 1-1.  The attached documentation of collateral is a "Certificate of Dishonor" related to an "Acceptance of Tax Violation Instrument."  Id. at 2.[2]  Such language is the sort of "[l]egal sounding but meaningless verbiage [which] is nothing more than a nullity."  Zahir v. Mountcastle, 2021 U.S. Dist. LEXIS 56646 at *6, 2021WL 1143381 at *3 (E.D. Pa. Mar. 25, 2021) (collecting cases); see also Vigil v. JP Morgan Chase, No. 2:25-cv-0629 DAD AC PS, ECF No. 5 at 4-5 (Findings and Recommendations), ECF No. 7 (Order adopting Findings and Recommendations).

---

[2] The UCC 1 Form states in the space provided for miscellaneous information, "Memorialization of a dishonored acceptance, no security interest in property or dollar amount."  Id. at 1.  Similar "Certificates of Dishonor" were attached in lieu of documentation of collateral in relation to all liens at issue.  See ECF No. 1-1 through 1-16 (plaintiff's Exhibits 1 through 16).

The factual allegations of complaint amply support the conclusion that none of the identified liens are legitimate.  The allegations also support a conclusion that the false liens were filed in response to, and in an obvious attempt to interfere with, a criminal investigation into defendant's taxes.  ECF No. 1 at ¶¶ 52-59 (detailing defendant's frivolous and threatening letters).  The alleged pattern of conduct supports an inference that defendant's filing of false liens, threats to file false liens, harassment of federal officials, and related efforts to impede the enforcement of the tax laws, will continue unless enjoined.  Accordingly, the allegations of the complaint are sufficient to state a claim that supports the relief sought.  Factors two and three strongly favor the entry of default judgment.

3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct.  Here, plaintiff seeks only equitable relief and no sum of money is at stake.  The non-monetary relief sought is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

4.    Factor Five: Possibility of Dispute Concerning Material Facts

Because the court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default, courts regularly find that little or no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff has repeatedly asserted that he does not intend to "argue the facts."  E.g., ECF No. 5 at 1.  It is thus clear that defendant has chosen not to defend this action.  Accordingly, this factor weighs in favor of default judgment.

5.    Factor Six: Whether Default Was Due to Excusable Neglect

The record in this case is incompatible with excusable neglect.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Defendant has persisted in filing non-cognizable documents rather than answering or defending, despite having been provided extra time in which to do so and guidance

8

about what was required.  See ECF No. 16 (order setting aside first entry of default, extending time to answer, and informing defendant that notices of acceptance and inquiry notices are not cognizable responses to the complaint and do not prevent default).  Instead of filing a pleading that admitted or denied the factual allegations of the complaint and specified defenses, as required by Fed. R. Civ. P. 8(b), defendant notified plaintiff and the court that he would "not argue the facts, jurisdiction, law or venue." ECF No. 17.  He subsequently acknowledged his awareness of the entry of default and the motion for default judgment, while again expressly choosing not to address the relevant facts or applicable law.  ECF Nos. 22, 25.  This course of conduct demonstrates deliberate non-cooperation with the litigation process, not excusable neglect.  This Eitel factor accordingly favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  District courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Here, where defendant has deliberately chosen not to participate in the litigation process, the case cannot be otherwise resolved and this factor does not weigh against default judgment.

### 7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment.

### C. Remedy

26 U.S.C. § 7402(a) provides this Court with "jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  Section 7402 has been repeatedly used to "to enjoin taxpayers from filing frivolous and unsupported documents against IRS employees acting in accordance with their official duties, and declare such documents null, void, and with no legal effect."  United States v. McGugan, 600 F. Supp. 2d 608, 611

(D.N.J. 2009) (citing cases).  That is precisely the relief plaintiff seeks here, and it should be granted.

District courts have not hesitated to issue remedial declarations that false liens are null, void, and without legal effect.  See, e.g. id. at 615 (ruling that purported liens against IRS employees are null, void and without legal effect); United States v. Crawford, Civ. A. No. 19-15776, 2019 U.S. Dist. LEXIS 189871, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (ruling that purported leans against prosecutors are null, void and without legal effect); United States v. Oreplex Int'l, LLC, No. 2:12-cv-1684 GEB AC, 2013 U.S. Dist. LEXIS 60112 (Jan. 31, 2013). Expungement of the false liens from the public record, and the filing and/or recording of the court's order, are also appropriate forms of relief.  McGugan, 600 F. Supp. 2d at 615.

Plaintiff also seeks an injunction prohibiting defendant from filing additional false liens or otherwise harassing, threatening, or impeding any official or employee of the United States in the enforcement of the internal revenue laws.  A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010).  This standard is satisfied here.

As another district court has persuasively explained in a similar case:

> Filing meritless liens to encumber the property of government employees causes irreparable harm to both the individual employees and the IRS as an institution. False liens can have an adverse impact on the financial affairs of the individual employees, such as clouding title to property owned by the [federal] employees and damaging their credit ratings. The false liens also can threaten substantial interference with the administration and enforcement of the Internal Revenue laws. Further, monetary damages are inadequate to compensate the individuals and the IRS. Even if a filed financing statement is without any merit, it will still exist in the public database and will affect the debtors' financial affairs until the improper lien is terminated. Moreover, the balance of hardships favors the [federal] employees. Without the injunction, Defendant could file additional liens to hinder [federal] employees' exercise of their official duties. In contrast, the hardship to [defendant] is minimal as he is not enforcing any legitimate security interest. Finally, the injunction will serve the public interest by securing the integrity of the public

10

records, namely UCC filing statements, and the fair administration of the tax laws.

United States v. Johnson, No. 15-1831, 2016 U.S. Dist. LEXIS 60110 at *21-23, 2016 WL 7408832 at *7 (E.D.N.Y. May 4, 2016) (recommendation of magistrate judge) (internal quotation marks and citations omitted), adopted by 2016 U.S. Dist. LEXIS 73604 (E.D.N.Y., June 3, 2016).

Plaintiff has also sufficiently established that "defendant's past and present misconduct indicates a strong likelihood of future violations." Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990) (citations omitted). The United States has supported its motion for default judgment with evidence that defendant has continued to file false liens against federal officials since commencement of this action. See ECF No. 23-3 (purported UCC Financing Statements filed in Colorado); ECF No. 23-4 (purported UCC Financing Statements filed in Texas).

For all these reasons, an injunction barring the filing of further false liens and the harassment of federal officials engaged in enforcement of the tax laws is appropriate. See, e.g., Oreplex, supra, No. 2:12-cv-1684 GEB AC, ECF No. 22 (Order of Default Judgment, Expungement and Permanent Injunction) (E.D. Cal., Mar.3, 2013); United States v. Brekke, No. 2:12-cv-0722 WBS JFM, ECF No. 18 (Order of Default Judgment, Expungement and Permanent Injunction) (E.D. Cal., Aug. 27, 2012); United States v. Tingler, No. 2:10-cv-3061 WBS KJN, ECF No. 25 (Amended Order of Expungement and Permanent Injunction) (E.D. Cal., Apr. 3, 2012); United States v. Roy, 2:06-cv-0220 WBS EFB, ECF No. 19 (Order entering judgment for United States and granting relief including declaration of lien's invalidity, expungement, and permanent injunction) (E.D. Cal., Feb. 27, 2007). The undersigned accordingly recommends that the requested injunctive relief be granted.

////

////

////

////

11

CONCLUSION

For the reasons explained above, it is RECOMMENDED that the motion for default judgment be GRANTED, and that judgment be entered on the terms set forth in plaintiff's motion at ECF No. 23-1, pp. 11-13.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: March 18, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12